1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    DARCEY LEE DUNCAN,                          Case No.  23-cv-01847-JSC
                    Plaintiff,
8
                                                 **ORDER RE: MOTION TO DISMISS**
9            v.                                   **SECOND AMENDED COMPLAINT**
10   COUNTY OF HUMBOLDT, et al.,                  Re: Dkt. No. 49
                    Defendants.
11
12
13        Plaintiff sues the County of Humboldt and seven County employees for claims arising
14   from the custodial placement of her nieces.  (Dkt. No. 47.)[1]  Defendants move to dismiss
15   Plaintiff's second amended complaint (SAC) under Federal Rule of Civil Procedure 12(b)(6).
16   (Dkt. No. 49.)  Having carefully considered the briefing, and with the benefit of oral argument on
17   June 20, 2024, the Court GRANTS Defendants' motion to dismiss as set forth below.
18                          **SECOND AMENDED COMPLAINT ALLEGATIONS**
19        Plaintiff is the aunt of R.K and N.O., two minor tribal members of the Cher-Ae Heights
20   Community of Trinidad Rancheria.  (Dkt. No. 47 ¶¶ 8, 24, 65.)  From August 2016 to August
21   2021, Plaintiff served as R.K.'s guardian.  (*Id.* ¶ 8.)  From October 2019 to June 2021, Plaintiff
22   served as N.O.'s foster parent.  (*Id.*)  In November 2020, a tribal social worker offered Plaintiff
23   respite care for N.O., saying she had a family in mind.  (*Id.* ¶ 26.)  After Plaintiff agreed to respite
24   care once a month with Eve Robinson and Greg Hotz, the tribal social worker pressured Plaintiff
25   to give up N.O. to Eve and Greg.  (*Id.* ¶¶ 27-28, 46.)
26        On April 15, 2021, Plaintiff realized the tribal social worker was not listed as the Indian
27   _____
28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Child Welfare Act contact for the Cher-Ae Heights Community of Trinidad Rancheria.  (*Id*. ¶ 30.)

2  Plaintiff raised this issue with Defendants Bollman, Nugent, Winstead, and Miller, who are

3  Humboldt County social workers.  (*Id*. ¶¶ 10, 12-14, 30.)  Plaintiff complained to Defendants

4  Bollman, Nugent, and Winstead regarding the tribal social worker's posturing as the Indian Child

5  Welfare Act contact and accused Defendants Bollman, Nugent, Winstead, and Miller of

6  conspiring with the tribal social worker to place N.O. "with [the tribal social worker's] own family

7  friends, Eve and Greg."  (*Id*. ¶ 31.)  In April 2021, Defendant Bollman twice requested Plaintiff

8  take a mental health examination.  (*Id*. ¶¶ 33-34.)  Plaintiff scheduled a mental health evaluation

9  with Rita Wafler.  (*Id*. ¶ 35.)

10      On April 25, 2021, the same tribal social worker took R.K. to McDonalds and bought her a

11  gift.  (*Id*. ¶ 74.)  During this trip, Plaintiff believes the tribal social worker manipulated R.K. into

12  lying about Plaintiff's treatment of her.  (*Id*.)  The next day, Humboldt County Child Welfare

13  Services received a report alleging emotional abuse and general neglect of R.K. at the hands of

14  Plaintiff, including "ongoing domestic violence between Darcey and her boyfriend in front of the

15  children."  (*Id*. ¶ 75.)  Despite these allegations, Child Welfare Services never conducted a mental

16  health evaluation of Plaintiff as to R.K. and allowed R.K. to stay in Plaintiff's home.  (*Id*. ¶ 76.)

17      On April 30, 2021, Ms. Wafler found Plaintiff to be free of mental health issues that would

18  impair her ability to care for N.O.  (*Id*. ¶ 36.)  Plaintiff forwarded her evaluation to Defendant

19  Bollman, who told her Child Welfare Services "did not acknowledge her evaluation because they

20  believed she was dishonest."  (*Id*. ¶ 37.)  On May 1, 2021, Defendant Bollman text messaged

21  Plaintiff to attend a conference call later the same day with Child Welfare Services Resource

22  Family Approval Supervisor Karen Hollenbeck and a different tribal social worker.  (*Id*. ¶ 38.)  On

23  the call, Plaintiff was told the Tribe revoked her status as a tribally-approved home and she had to

24  complete the Family Resource Approval process.  (*Id*.)  No explanation was offered for the

25  revocation.  (*Id*.)  Plaintiff immediately signed up for Humboldt County Family Resource

26  Approval classes through College of the Redwoods.  (*Id*.)

27      On May 3, 2021, Defendant Bollman told Plaintiff she scheduled a Placement Preservation

28  meeting at the Child Welfare Office in Eureka, California for May 27, 2021.  (*Id*. ¶ 40.)

2

1    Defendant Bollman then requested Plaintiff sign an emergency placement agreement and

2    scheduled a home visit for May 10, 2021.  (*Id*.)  This would be the first home visit conducted in

3    the 19 months since N.O. was placed with Plaintiff.  (*Id*.)  By this time, Defendant Miller had

4    initiated through Child Welfare Services the investigation into Plaintiff's alleged emotional abuse

5    of R.K.  (*Id*. ¶ 43.)  Plaintiff believes Defendants Bollman and Miller conspired together to revoke

6    her tribally-approved-home status, "knowing that if they reported the abuse was substantiated

7    against [Plaintiff] as to R.K., [Plaintiff] could not get approval through the County Foster Program

8    and would lose N.O.'s placement to Eve and Greg."  (*Id*. ¶ 43.)

9         At the Placement Preservation meeting on May 27, 2021, Defendant Nugent informed

10   Plaintiff, along with ten family members and friends, N.O. would be removed from Plaintiff's

11   home in 14 days and placed with Eve and Greg, a non-Indian family.  (*Id*. ¶¶ 45-46.)  Defendant

12   Nugent denied Plaintiff preservation services to help N.O. stay with her family.  (*Id*. ¶ 47.)

13   Plaintiff never received written notice of the removal with information on the grievance process or

14   grievance appeal form, and when she asked Defendants Bollman, Nugent, and Miller for grievance

15   information, they ignored her.  (*Id*. ¶ 50.)

16        Prior to the May 2021 Placement Preservation meeting, Child Welfare Services had

17   terminated Selena Duncan's reunification services and her visits with N.O. were decreased to once

18   a month before they would end completely.  (*Id*. ¶ 51.)  After the May 2021 Placement

19   Preservation meeting, Defendants Bollman and Nugent bribed Selena, offering to give her six

20   more months of reunification services with three visits a week if she agreed to place N.O. with

21   Eve and Greg.  (*Id*.)  Selena agreed and regained services and visits despite being "on drugs" and

22   having "finished no part of her case plan, including completing rehab."  (*Id*.)

23        On June 2, 2021, Defendant Miller, who led the investigation into Plaintiff's alleged abuse

24   of R.K., found the abuse was substantiated and determined "[t]he home environment of Darcey

25   Duncan is a highly charged environment and additional support is needed for both R.K. and D.D."

26   (*Id*. ¶ 78.)  Plaintiff claims Defendant Miller's report "is replete with false information" and was

27   issued in retaliation for Plaintiff's refusal to give up N.O. to Eve and Greg and concern over the

28   tribal social worker's representations she was the Tribe's Indian Child Welfare Act designee.  (*Id*.

United States District Court
Northern District of California

3

1    ¶¶ 61, 81, 149.)

2         On June 10, 2021, N.O. was removed from Plaintiff's home.  (*Id.* ¶ 57.)  On June 13, 2021,

3    Plaintiff received a letter saying her name was added to the California Abuse Central Index, but

4    the letter omitted the Child Abuse Central Index Listing grievance procedures and grievance

5    hearing form.  (*Id.* ¶ 84.)  Though Plaintiff had completed the College of Redwoods foster-parent

6    training and her application for tribally-approved-home status was nearly complete, Plaintiff's

7    placement on the California Abuse Central Index forced her to withdraw her application.  (*Id.* ¶

8    56.)

9         On June 22, 2021, Defendant Baca filed allegations of emotional abuse and general neglect

10   against Plaintiff in Humboldt County Superior Court.  (*Id.* ¶¶ 87, 244.)  In December 2021,

11   Mendocino County Department of Social Services Senior Program Manager John Flammang held

12   Plaintiff's California Abuse Central Index grievance hearing, and thereafter recommended the

13   allegations of abuse against Plaintiff that Defendant Miller had determined were substantiated

14   were inconclusive.  (*Id.* ¶ 90.)  On January 18, 2022, Defendant Beck, Director of the Humboldt

15   County Department of Health and Human Services, adopted Mr. Flammang's recommendation.

16   (*Id.*)  As a result, Plaintiff's abuse listing in the Child Abuse Central Index was changed from

17   substantiated to inconclusive.  (*Id.* ¶ 91.)

18                                      **DISCUSSION**

19        The Court previously dismissed Plaintiff's first, second, and fourth causes of action in their

20   entirety without leave to amend.  (Dkt. No. 45 at 24.)  Defendants move to dismiss all remaining

21   causes of action, except for the third.  As for the third cause of action, Defendant Baca asserts

22   absolute prosecutorial immunity, while Defendants Bollman, Boyle, Miller, and Nugent do not

23   move to dismiss.

24        Dismissal under Rule 12(b)(6) "may be based on either a lack of a cognizable legal theory

25   or the absence of sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside*

26   *Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up).  For Plaintiff's challenged

27   claims to survive, the SAC's factual allegations must raise a plausible right to relief.  *Bell Atl.*

28   *Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007).  Though the Court must accept the operative

United States District Court
Northern District of California

4

complaint's factual allegations as true, conclusory assertions are insufficient to state a claim.
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when the plaintiff pleads
enough factual content to justify the reasonable inference the defendant is liable for the
misconduct alleged.  *Id.*

## I.   Seventh, Tenth, & Eleventh Causes of Action

Plaintiff withdraws her seventh, tenth, and eleventh causes of action.  (Dkt. No. 51 at 18,
20.)  Accordingly, these causes of action are DISMISSED.

## II.   Twelfth Cause of Action: Declaratory and Injunctive Relief

Plaintiff's twelfth cause of action seeks "declaratory and injunctive relief."  Specifically,
Plaintiff requests the Court require the County "to adopt a new policy that all actions,
investigations, and reports are subject to independent review by non-affiliated individuals" and
order all County Child Welfare Services social workers "be highly trained in [Indian Child
Welfare Act] law, Indigenous people's trauma, especially intergenerational trauma and adverse
childhood experiences, and taught and trained in empathy," among other things.  (Dkt. No. 47 ¶
282.)  In her opposition, Plaintiff clarifies she seeks only "declaratory relief not injunctive relief at
this time."  (Dkt. No. 51 at 21.)

Plaintiff fails to state a claim for injunctive or declaratory relief because those are not
causes of action.  "[I]njunctive relief is a remedy and not, in itself, a cause of action, and a cause
of action must exist before injunctive relief may be granted.  Additionally, a claim for declaratory
relief is duplicative and unnecessary when it is commensurate with the relief sought through other
causes of action."  *Khankin v. JLR San Jose, LLC*, No. 3:23-CV-06145-JSC, 2024 WL 2274445,
at *3 (N.D. Cal. May 17, 2024).  Accordingly, Plaintiff's independent cause of action for
declaratory and injunctive relief must be DISMISSED.

## III.   Third Cause of Action: First Amendment Retaliation

While the SAC is somewhat unclear as to the retaliatory acts Defendant Baca took against
Plaintiff, Plaintiff's opposition clarifies she is challenging Defendant Baca's initiation of the
contempt charge against Plaintiff for publicly sharing confidential information about N.O.  (Dkt.
No. 51 at  6.)  Plaintiff alleges that as part of Plaintiff's Welfare and Institutions Code § 388

United States District Court
Northern District of California

1    hearing, Defendant Baca filed:

2              a contempt of court which stated under penalty of perjury by BACA
             that PLAINTIFF posted confidential information about her niece
3              N.O.'s case and made negative comments about Sundberg on public
             social media. Attorney BACA during her investigation fabricated a
4              story that PLAINTIFF posted confidential information on her social
             media page which she reiterated in a sworn affidavit attached to the
5              contempt documentation.   This was an act of retaliation and
             maliciously so to find PLAINTIFF in contempt of court.

6

7    (Dkt. No. 47 at ¶ 58.)

8              Defendant Baca moves to dismiss Plaintiff's First Amendment retaliation claim on

9    absolute prosecutorial immunity grounds.  Defendant Baca is Deputy County Counsel for

10   Humboldt County.  (Dkt. No. 47 ¶¶ 16, 58-59.)   Prosecutors enjoy absolute immunity from civil

11   suits for damages under 42 U.S.C. § 1983 when engaged in activities "intimately associated with

12   the judicial phase of the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).

13   "Only in initiating a prosecution and in presenting the State's case is the prosecutor absolutely

14   immune."  *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003) (en banc) (cleaned up).  This

15   absolute immunity covers a county counsel's decision to institute juvenile dependency

16   proceedings and discretionary, quasi-prosecutorial actions taken during those proceedings.  *Miller*

17   *v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003) (en banc); *see also Hardwick v. Cnty. of Orange*,

18   844 F.3d 1112, 1115 (9th Cir. 2017) ("Absolute immunity from private lawsuits covers the official

19   activities of [state actors] only when they perform quasi-prosecutorial or quasi-judicial functions

20   in juvenile dependency court."); *see also Safouane v. Fleck*, 226 F. App'x 753, 762 (9th Cir.

21   2007), *as amended on denial of reh'g and reh'g en banc* (July 26, 2007) (ruling allegations against

22   state officers involving "actions taken during or to initiate proceedings. . . were properly dismissed

23   for prosecutorial immunity.").

24             Defendant Baca's initiation of the contempt proceeding was at least a quasi-prosecutorial

25   function during juvenile dependency proceedings.  California's Welfare and Institution Code §

26   388 provides:

27              Any parent or other person having an interest in a child who is a
             dependent child of the juvenile court . . . may, upon grounds of change
28              of circumstance or new evidence, petition the court *in the same action*

United States District Court
Northern District of California

1

*in which the child was found to be a dependent child of the juvenile*
*court . . .* for a hearing to change, modify, or set aside any order of
court previously made or to terminate the jurisdiction of the court.

2

3     Cal. Welf. & Inst. Code § 388(a)(1) (emphasis added).  Because Plaintiff submitted her § 388

4     petition in an existing juvenile dependency action, Defendant Baca's request for a contempt order

5     against Plaintiff at the § 388 hearing was part of and made during juvenile dependency

6     proceedings.  And, Defendant Baca requested the contempt order in her capacity as the County's

7     advocate.  As a matter of law, Defendant Baca is absolutely immune from suit for pursuing a

8     contempt order against Plaintiff in an ongoing juvenile dependency action while functioning as the

9     County's "advocate within the judicial decision-making process."  *Miller*, 335 F.3d 889, 896; *see*

10    *also Hardwick*, 844 F.3d at 1115 ("[A]bsolute immunity covers a [state actor's] activity or

11    'function'" if it is "part and parcel of presenting the state's case as a generic advocate[.]").

12           Plaintiff does not dispute Defendant Baca is entitled to absolute immunity for pursuing

13    contempt charges against Plaintiff during the dependency proceedings.  She instead asserts

14    Defendant Baca is liable for her conduct while investigating the contempt charges.  Prosecutors

15    "have no absolute immunity for their investigatory conduct" or if they "fabricate[] evidence during

16    a preliminary investigation, before [they] could properly claim to be acting as an advocate, or

17    make[] false statements in a sworn affidavit in support of an application for an arrest warrant."

18    *Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008) (cleaned up).  So, the question is

19    whether Plaintiff has plausibly alleged Defendant Baca fabricated evidence or made a false

20    statement in a sworn affidavit.  She has not.

21           According to the SAC, Defendant Baca filed the contempt order application "object[ing] to

22    the ongoing public dissemination of confidential case information by [Plaintiff] on social media

23    forums including Facebook" and attached "a private text message between [Plaintiff] and Jesse

24    Armstrong" that did "not show any confidential case information being released."  (Dkt. No. 47 ¶

25    59.)  Plaintiff does not allege or argue Defendant Baca fabricated the private text message

26    exchange attached to her declaration; instead, Plaintiff concludes Defendant Baca "fabricated a

27    story" and argues Defendant Baca "fabricated the claim."  (Dkt. Nos. 47 ¶ 58, 51 at 7.)  Drawing

28    all reasonable inferences in Plaintiff's favor, the factual allegations do not support a plausible

United States District Court
Northern District of California

1    inference Defendant Baca falsified any evidence.  Plaintiff merely disagrees the attachment

2    demonstrated Plaintiff's public sharing of confidential information about N.O.  (Dkt. No. 47 ¶ 58-

3    59.)  But Defendant Baca's "determination that the evidence was sufficiently strong to justify a

4    probable-cause finding, her decision to file charges, and her presentation of the information and

5    the motion to the court" "was the work of an advocate and was integral to the initiation of the

6    prosecution."  *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997).  So, Defendant Baca is absolutely

7    immune for her use of accurate information in a contempt application filed against Plaintiff.

8            However, a prosecutor is entitled only to qualified immunity when functioning as a

9    complaining witness in certifying facts in an affidavit in support of an application for an arrest

10   warrant.  *Kalina*, 522 U.S. at 130-31; *see also Waggy v. Spokane Cnty. Washington*, 594 F.3d 707,

11   711 (9th Cir. 2010) ("[A] prosecutor sheds absolute immunity when she acts as a 'complaining

12   witness' by certifying that the facts alleged within an affidavit are true.").  Plaintiff alleges

13   Defendant Baca filed an affidavit under penalty of perjury stating Plaintiff had "posted

14   confidential information about her niece N.O.'s case and made negative comments about [the

15   tribal social worker] on social media."  (Dkt. No. 47 ¶ 58.)  Plaintiff further alleges Defendant

16   Baca's affidavit mischaracterized the evidence attached to her affidavit to support her contempt

17   application.  (*Id*. ¶¶ 58-59.)  Assuming, without deciding, only qualified immunity applies to this

18   conduc,t and drawing all reasonable inferences in Plaintiff's favor, the SAC's factual allegations

19   are insufficient to support the plausible inference Defendant Baca certified untrue facts in her

20   affidavit.  What false facts did Defendant Baca personally certify as true in her affidavit?  Why are

21   those facts false?

22           Moreover, Rule 9(b) requires Plaintiff allege "with particularity the circumstances

23   constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

24                   Rule 9(b) serves three purposes: (1) to provide defendants with
                     adequate notice to allow them to defend the charge and deter plaintiffs
25                   from the filing of complaints as a pretext for the discovery of
                     unknown wrongs; (2) to protect those whose reputation would be
26                   harmed as a result of being subject to fraud charges; and (3) to prohibit
                     plaintiffs from unilaterally imposing upon the court, the parties and
27                   society enormous social and economic costs absent some factual
                     basis.
28

1    *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (cleaned up).  "Averments of

2    fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."

3    *Id.* at 1124.  "Where fraud is not an essential element of a claim, only those allegations of a

4    complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard."  *Id.*; *see also*

5    *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("[I]n a case where fraud is

6    not an essential element of a claim, only allegations ('averments') of fraudulent conduct must

7    satisfy the heightened pleading requirements of Rule 9(b).").  The SAC fails to particularly allege

8    the fraudulent conduct underlying Plaintiff's third cause of action against Defendant Baca by

9    failing to identify the false facts Defendant Baca personally certified and why those facts were

10   false.  Because Plaintiff fails to allege facts sufficient to support the inference Defendant Baca

11   certified untrue facts while functioning as a complaining witness, Plaintiff fails to overcome

12   Defendant Baca's qualified prosecutorial immunity.

13        Accordingly, the third cause of action as to Defendant Baca is DISMISSED.

14   **IV.    Fifth Cause of Action: *Monell*-Related Claims**

15        Plaintiff alleges Defendant County retaliated against Plaintiff as part of a "known [Child

16   Welfare Services] statewide common practice of labeling families that contradict or criticize

17   [Child Welfare Workers] as having mental health issues, and remov[ing] children from them or

18   deny services, or act[ing] in other retaliatory ways as a kickback for the parent's (for [*sic*]

19   relative's) criticism."  (Dkt. No. 47 ¶ 205.)  Plaintiff also accuses the County of "establish[ing]

20   and/or follow[ing] policies, procedures, customs, and/or practices" to (1) deny Indian foster

21   parents their due process rights by failing to give adequate notice of proceedings potentially

22   affecting those rights; (2) detain and remove children from their Indian foster parents without

23   imminent danger of serious bodily harm, consent, prior court order, or providing adequate notice

24   or an opportunity to be heard; (3) refuse the § 1915 placement preferences of Indian foster parents;

25   (4) fail to return children to their foster parents "beyond a reasonable time period after the basis

26   for detention is negated"; (5) use fabricated evidence in juvenile court reports; and (6) act with

27   deliberate indifference toward constitutional protections, the Indian Child Welfare Act, policies of

28   the Department of Health and Human Services, and the retaliatory nature of social workers.  (*Id.* ¶

United States District Court
Northern District of California

1   206.)

2      A municipality is liable under § 1983 only where the alleged unconstitutional conduct is

3   the result of an official policy, pattern, or practice.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658,

4   694 (1978).  To state a claim for municipal liability under § 1983, a plaintiff must plausibly allege:

5   "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the

6   municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

7   constitutional rights; and (4) that the policy is the moving force behind the constitutional

8   violation."  *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)

9   (cleaned up).  There can be no municipal liability without an underlying constitutional violation.

10  *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).

11              A *Monell* claim can proceed under three theories of municipal
            liability: (1) when official policies or established customs inflict a
12          constitutional injury; (2) when omissions or failures to act amount to
            a local government policy of deliberate indifference to constitutional
13          rights; or (3) when a local government official with final policy-
            making authority ratifies a subordinate's unconstitutional conduct.
14

15  *Hofer v. Emley*, No. 19-CV-02205-JSC, 2019 WL 4575389, at *14 (N.D. Cal. Sept. 20, 2019).  No

16  matter the alleged theory, the plaintiff must plead facts showing "the policy is the moving force

17  behind the constitutional violation."  *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir.

18  2011); *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there

19  must be an affirmative link between the policy and the particular constitutional violation

20  alleged.").  "Proof of a single incident of unconstitutional activity is not sufficient to impose

21  liability under *Monell*, unless proof of the incident includes proof that it was caused by an

22  existing, unconstitutional municipal policy, which policy can be attributed to a municipal

23  policymaker."  *Tuttle*, 471 U.S. at 823-24.  However, policy or custom may be inferred by a

24  policymaker's subsequent acceptance of unlawful conduct or failure to take corrective action.

25  *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).

26      Plaintiff's *Monell* claim advances two theories of municipal liability.  First, Plaintiff

27  alleges the County has a custom of retaliating against Indian custodians who criticize social

28  workers.  (Dkt. No. 47 ¶ 205.)  Second, Plaintiff alleges the County's lack of policies and training

10

1  delineating the rights of Indian custodians amounts to deliberate indifference to the rights of

2  Indian custodians.  (*Id.*)  Plaintiff fails to allege a plausible *Monell* claim under either theory.

3          In the Court's Order dismissing a past iteration of Plaintiff's complaint, the Court directed

4  Plaintiff "must plead facts that plausibly support an inference the County has a custom, policy or

5  practice that caused the violation of her constitutional rights.  Simply identifying 10 alleged

6  policies—without stating facts that plausibly support an inference those policies exist—is

7  insufficient."  (Dkt. No. 45 at 23.)  Plaintiff's SAC fails to allege such facts.  The complaint is

8  devoid of factual allegations that support an inference the County has a custom of or is

9  deliberately indifferent to retaliatory conduct by social workers.  Plaintiff's own experience is not

10  enough to support a plausible inference of the County's retaliatory custom or deliberate

11  indifference to the "retaliatory nature by social workers."  (Dkt. No. 47 ¶ 206.)  "[O]ne instance of

12  County employees violating the constitutional rights of parents and children is insufficient to

13  demonstrate a custom supporting *Monell* liability."  *Benavidez v. Cnty. of San Diego*, 993 F.3d

14  1134, 1154 (9th Cir. 2021); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability

15  for improper custom may not be predicated on isolated or sporadic incidents; it must be founded

16  upon practices of sufficient duration, frequency and consistency that the conduct has become a

17  traditional method of carrying out policy.").

18          Likewise, the absence of factual allegations supporting Plaintiff's failure-to-train theory is

19  fatal.  A plaintiff can plead a failure-to-train theory without alleging a pattern of constitutional

20  violations "where a violation of federal rights may be a highly predictable consequence of a failure

21  to equip law enforcement officers with specific tools to handle recurring situations."  *Long v.*

22  *Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (cleaned up).  The SAC fails to allege

23  facts to support the inference the violation of Indian custodians' rights is a highly predictable

24  consequence of the alleged failure to train social workers on the Indian Child Welfare Act.

25  Plaintiff alleges the County is aware "social workers remove children with no emergency

26  circumstances and in contravention of the rights of Indian Custodians under ICWA" because

27              [i]n 2018, the California Department of Justice entered into a
            stipulated judgment with COUNTY-DHHS, CWS which required
28              COUNTY to contact with [National Council on Crime and

1

Delinquency] for two years to provide training in part, culturally
responsive services, training of the Welfare and Institutions Code, and
in 2021 the Department of Justice determined that COUNTY had still
not met it's [*sic*] obligations.

2

3   (Dkt. No. 47 ¶ 210.)  On this basis, Plaintiff alleges the County "made a knowing and conscious

4   decision to refrain from promulgating policies to prevent such misconduct, and has consistently

5   and knowingly failed to provide any meaningful training to members of the Defendant Social

6   Worker Class to the effect of [Indian Child Welfare Act] laws and regulations." (*Id.*)  But Plaintiff

7   again fails to allege details sufficient to infer the relationship between this stipulated judgment and

8   the alleged deprivation of constitutional rights of Indian custodians.  How is the stipulated

9   judgment related to social workers' removal of children in violation of the rights of Indian

10  custodians?  What misconduct resulted in the stipulated judgment?  And, how has that misconduct

11  led to a violation of Plaintiff's constitutional rights?

12        As in her previous opposition to Defendants' previous motion to dismiss, Plaintiff cites

13  *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007) to argue "it would be premature to dismiss

14  this claim." (Dkt. No. 51 at 15; *see* Dkt. No. 40 at 36.)  As the Court noted in its last Order,

15  *Hydrick* was vacated by the United States Supreme Court.  (Dkt. No. 45 at 23 ("But *Hydrick* was

16  vacated by the United States Supreme Court.  556 U.S. 1256 (2009) ("Judgment vacated, and case

17  remanded to the United States Court of Appeals for the Ninth Circuit for further consideration in

18  light of *Ashcoft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).").").)

19        Accordingly, Plaintiff's fifth cause of action is DISMISSED.

20  **V.     Sixth Cause of Action: Violation of State Civil Rights**

21        Plaintiff accuses Defendants of violating her rights under the Unruh Civil Rights Act, Tom

22  Bane Civil Rights Act, and various other California statutes.  (Dkt. No. 47 ¶ 223.)  Because

23  Plaintiff conceded dismissal of her Unruh Act claim, (Dkt. No. 40 at 38), and defends only her

24  Bane Act claim, Plaintiff's sixth cause of action alleging underlying violations of California Civil

25  Code §§ 43, 45, 46, 51, and 52 is DISMISSED.  Additionally, Plaintiff withdraws her sixth cause

26  of action against Defendants Beck and Winstead.  (Dkt. No. 51 at 16.)  Accordingly, Plaintiff's

27  sixth cause of action as to Defendants Beck and Winstead is DISMISSED.

28        The Bane Act provides a private right of action for interference with state or federal rights

United States District Court
Northern District of California

12

by threat, intimidation, or coercion.  Cal. Civ. Code § 52.1(b)-(c).  To state a Bane Act claim, Plaintiff must allege 1) interference with her rights by "threat, intimidation, or coercion" and 2) County Defendants' specific intent to violate her rights.  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).  The Court previously dismissed Plaintiff's Bane Act claim for impermissible group pleading in violation of Federal Rules of Civil Procedure 8(a) and 9(b).  (Dkt. No. 45 at 9.)  The SAC fails to correct this defect as to Defendants Boyle, Bollman, and Nugent. (Dkt. No. 47 ¶¶ 220-29.)  Indeed, the only change in Plaintiff's Bane Act claim is the removal of tribal social workers' names.  (Dkt. Nos. 25 ¶¶ 220-29, 47 ¶¶ 220-29.)  Accordingly, Plaintiff's Bane Act claim against Defendants Boyle, Bollman, and Nugent is DISMISSED.

The only specific allegations in Plaintiff's Bane Act claim are directed to Defendant Miller for determining R.K.'s emotional abuse allegations against Plaintiff were substantiated and adding Plaintiff's name to the Child Abuse Central Index and Defendant Baca for pursuing a contempt charge against Plaintiff.  (Dkt. Nos. 47 ¶ 225.)  Defendants seek dismissal of Plaintiff's Bane Act claim on the grounds they are immune and Plaintiff's claim is barred by the litigation privilege.

### a.   Defendant Miller

Defendant Miller asserts immunity under California Government Code §§ 820.2 and 821.6.  Under § 820.2, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Cal. Gov't Code § 820.2.  Under § 815.2, "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  Cal. Gov't Code § 815.2.  "The immunity provided by these statutes is broad, and includes immunity for social workers' removal and placement decisions."  *Gabrielle A. v. Cnty. of Orange*, 10 Cal. App. 5th 1268, 1285 (2017), *as modified* (Apr. 18, 2017).  Under § 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code § 821.6. "[S]ection 821.6 provides complete immunity for social workers (and the county) for their actions taken to investigate, declare children dependents of the county, and cause their removal from

13

1    parental control." *Ronald S. v. Cnty. of San Diego*, 16 Cal. App. 4th 887, 899 (1993).  On their

2    face, these statutes immunize Defendant Miller from Plaintiff's Bane Act claim.

3         Plaintiff nonetheless urges § 820.21 excepts Defendant Miller from § 821.6 civil

4    immunity.  Section 820.21 provides "the civil immunity of juvenile court social workers, child

5    protection workers, and other public employees authorized to initiate or conduct investigations or

6    proceedings" shall not extend to malicious perjury, fabrication of evidence, failure to disclose

7    known exculpatory evidence, and obtaining of testimony by duress.  Cal. Gov't Code § 820.21.

8    Plaintiff, however, has not plausibly alleged Defendant Miller engaged in any of this conduct.

9         Defendant Miller's report substantiating R.K.'s abuse allegations states: "Darcey Duncan

10   has been unable to make any connection between her own actions and R.K.'s self-harming

11   behaviors and has related R.K.'s self-harming behaviors on her past trauma and being an

12   adolescent." (Dkt. No. 47 ¶ 78.)  Plaintiff alleges Defendant Miller's report failed to disclose the

13   "exculpatory information" that neither Plaintiff nor her long-term partner had "seen any marks on

14   [R.K.'s] arms or legs."  (*Id*. ¶ 80.)  But the SAC does not explain how Plaintiff's failure to notice

15   indicia of self-harm on R.K. exculpates Plaintiff from R.K.'s abuse allegations.  How does the fact

16   Plaintiff did not see self-harm marks on R.K. absolve Plaintiff of R.K.'s abuse allegations?

17   Likewise, Defendant Miller's omission of Plaintiff's mental health evaluation from Defendant

18   Miller's report fails to support the inference Defendant Miller maliciously withheld exculpatory

19   evidence because Plaintiff fails to allege facts permitting the plausible inference the inclusion of

20   Plaintiff's mental health evaluation would have exculpated Plaintiff of R.K.'s abuse allegations.

21        Plaintiff further alleges Defendant Miller's report "is replete with false information" and

22   misstates Plaintiff's words.  (Dkt. No. 47 ¶ 81.)  But Plaintiff does not allege any facts supporting

23   these conclusions.  Did Defendant Miller knowingly attest to the truth of false facts under penalty

24   of perjury?  If so, what facts, when, and to whom?  Further, the SAC appears to sue Defendant

25   Miller for her statements in juvenile court filings submitted during custody proceedings.  (Dkt. No.

26   47 ¶¶ 78-79.)  The California litigation privilege absolutely bars all claims but malicious

27   prosecution attacking "any publication required or permitted by law in the course of a judicial

28   proceeding to achieve the objects of the litigation."  *Silberg v. Anderson*, 50 Cal. 3d 205, 212

1    (1990), *as modified* (Mar. 12, 1990); *see* Cal. Civ. Code § 47.  So, Plaintiff cannot maintain a

2    Bane Act claim against Defendant Miller for her statements in juvenile court filings logically

3    related to the custody proceedings, even if those statements "are, or are alleged to be, fraudulent,

4    perjurious, unethical, or even illegal." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 920 (2002).

5            Plaintiff fails to allege facts sufficient to support the plausible inference Defendant Miller

6    maliciously perjured herself, fabricated evidence, failed to disclose known exculpatory evidence,

7    or obtained testimony by duress.  So, Plaintiff's argument § 820.21 excepts Defendant Miller from

8    the civil immunity afforded by § 820.2 and § 821.6 fails.  Drawing all reasonable inferences from

9    the SAC in Plaintiff's favor, Defendant Miller is entitled to immunity from Plaintiff's Bane Act

10   claim under §§ 820.2 and 821.6.  Accordingly, Plaintiff's Bane Act claim against Defendant

11   Miller is DISMISSED.

12                  **b. Defendant Baca**

13           Defendant Baca asserts immunity under California Government Code § 821.6.  As

14   discussed above, the SAC lacks factual allegations sufficient to support the inference Defendant

15   Baca fabricated any evidence or perjured herself before the juvenile court.  Further, Plaintiff does

16   not allege Defendant Baca maliciously withheld exculpatory information or obtained testimony

17   through duress.  Plaintiff nonetheless argues Defendant "Baca coerced [Plaintiff] into withdrawing

18   her de facto parent petition" and Plaintiff "was so scared and stressed from both the contempt and

19   abuse charge as to R.K. that she felt she had to withdraw her petition even though she knew that

20   there was no probable cause behind the contempt."  (Dkt. No. 51 at 9.)  But this argument fails to

21   compel a different result because Plaintiff's allegations fail to support the plausible inference

22   Defendant Baca maliciously perjured herself, falsified evidence, withheld exculpatory evidence, or

23   obtained testimony through duress.  Defendant Baca is immune under § 821.6 from Plaintiff's

24   Bane Act claim.  So, Plaintiff's Bane Act claim against Defendant Baca is DISMISSED.

25   **VI.    Eighth & Ninth Causes of Action: Malicious Prosecution**

26           Plaintiff's eighth cause of action alleges Defendants Baca and Miller maliciously

27   prosecuted Plaintiff by pursuing R.K.'s emotional abuse allegations.  Plaintiff's ninth cause of

28   action accuses Defendant Baca of maliciously prosecuting Plaintiff by bringing a contempt charge

United States District Court
Northern District of California

15

against Plaintiff during ongoing dependency proceedings.

"To establish a cause of action for malicious prosecution, a plaintiff must demonstrate that the prior action (1) was initiated by or at the direction of the defendant and legally terminated in the plaintiff's favor, (2) was brought without probable cause, and (3) was initiated with malice." *Siebel v. Mittlesteadt*, 41 Cal. 4th 735, 740 (2007).

### a. Eighth Cause of Action

Plaintiff alleges Defendant Miller maliciously investigated and substantiated R.K.'s emotional abuse allegations against Plaintiff and placed Plaintiff's name on the California Abuse Central Index.  (Dkt. No. 47 ¶ 244.)  She further alleges Defendant Baca "brought emotional abuse charges under W&IC 300 against [Plaintiff] and dropped the charges when [Plaintiff's] name was placed on the [California Abuse Central Index]."  (*Id*. ¶ 245.)

### i. Defendant Miller

As determined above, the SAC fails to allege sufficient factual content to overcome the immunities to which Defendant Miller is entitled under §§ 820.2 and 821.6.  So, the eighth cause of action must be dismissed.

Defendant Miller argues the eighth cause of action fails for the additional reason that Plaintiff fails to allege "the initiation of a full blown action as well as its favorable termination for the malicious prosecution plaintiff."  *Adams v. Superior Ct.*, 2 Cal. App. 4th 521, 528 (1992).  In her opposition, Plaintiff does not identify an action initiated by Defendant Miller, and instead argues the grievance hearing at which Senior Program Manager Flammang recommended the allegation of emotional abuse against Plaintiff was inconclusive constitutes a favorable termination.  But Defendant Miller's alleged placement of Plaintiff on California Abuse Central Index is not a "full blown action"; at most it is a "subsidiary procedural action[] within a lawsuit such as an application for a restraining order or for a lien."  *Adams*, 2 Cal. App. 4th at 528.  Indeed, Plaintiff alleges she was involved in dependency proceedings under Welfare and Institutions Code § 300 as to R.K. at the time Defendant Miller added Plaintiff's name to the California Abuse Central Index.  (Dkt. No. 47 ¶¶ 78-79, 84.)  Because Plaintiff fails to allege facts sufficient to support the inference Defendant Miller initiated a "full blown action" against

1    Plaintiff, Plaintiff's eighth cause of action against Defendant Miller fails.

2                     **ii.  Defendant Baca**

3           As explained above, Defendant Baca is entitled to absolute immunity for initiating the

4    abuse charges against Plaintiff.  Plaintiff's claim fails for the additional reason that she does not

5    allege facts supporting the plausible inference Defendant Baca lacked probable cause to bring

6    emotional abuse charges against Plaintiff.

7                     "Probable cause" to prosecute an action means an objectively
                      reasonable belief that the action is legally tenable.  There is no
8                     probable cause to prosecute an action only if no reasonable attorney
                      would believe that the action had any merit and any reasonable
9                     attorney would agree that the action was totally and completely
                      without merit.
10

11   *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 926 (2010) (cleaned up).  "Whether there was probable

12   cause to have prosecuted an action in light of the facts then known to the malicious prosecution

13   defendant is a legal question for the court to decide."  *Id*. at 927.  Drawing all reasonable

14   inferences from the SAC in Plaintiff's favor, when Defendant Baca filed allegations of emotional

15   abuse and general neglect against Plaintiff on June 22, 2021, Defendant Baca knew R.K. disclosed

16   Plaintiff had abused her, (Dkt. No. 47 ¶¶ 74, 75), and had Defendant Miller's report substantiating

17   R.K.'s claims of abuse.  (*Id*. ¶¶ 78-79.)  Though Plaintiff insists R.K. was lying and Defendant

18   Miller's investigation was "shifty, unethical, and deleterious," (*Id*. ¶¶ 74, 77, 85), she fails to

19   plausibly allege the absence of probable cause because a reasonable attorney could believe the

20   abuse allegations had merit given R.K.'s substantiated disclosure of abuse.  In light of R.K.'s

21   substantiated disclosure, it is implausible Defendant Baca lacked probable cause to bring abuse

22   allegations against Plaintiff.  So, Plaintiff's eighth cause of action against Defendant Baca is

23   DISMISSED.

24                  **b.  Ninth Cause of Action**

25          Again, as described above, Defendant Baca is immune from liability for initiating the

26   contempt charge and no exception to immunity has been plausibly alleged.  Plaintiff's ninth cause

27   of action against Defendant Baca fails for the additional reason the SAC lacks allegations

28   supporting the plausible inference the contempt charge against Plaintiff was "a full blown action"

United States District Court
Northern District of California

17

1  terminated in Plaintiff's favor. *Adams*, 2 Cal. App. 4th at 528.  Plaintiff alleges Defendant Baca

2  filed "a contempt of court" against Plaintiff during a hearing under Welfare and Institutions Code

3  § 388.  As discussed above, Defendant Baca's request for a contempt order against Plaintiff at the

4  § 388 hearing was not the institution of proceedings but a motion made during ongoing

5  proceedings.  So, Defendant Baca's contempt accusation was not a "full blown action", but a

6  "subsidiary procedural action" filed as part of ongoing juvenile dependency proceedings. *Adams*,

7  2 Cal. App. 4th at 528.  Further, Plaintiff nowhere alleges the contempt charge terminated in her

8  favor.  While if given leave to amend Plaintiff might be able to allege the contempt charge was

9  terminated, leave to amend would be futile because the contempt charge was a subsidiary

10  procedural action.  Accordingly, Plaintiff's ninth cause of action against Defendant Baca is

11  DISMISSED.

12                                    **CONCLUSION**

13         Plaintiff's seventh, eighth, ninth, tenth, eleventh, and twelfth causes of action are

14  DISMISSED without leave to amend.  Plaintiff's sixth cause of action against Defendants Beck,

15  Bollman, Boyle, Nugent, and Winstead is also DISMISSED without leave to amend.

16  Additionally, Plaintiff's sixth cause of action alleging underlying violations of California Civil

17  Code §§ 43, 45, 46, 51, and 52 is DISMISSED without leave to amend.  And, Plaintiff's fifth

18  cause of action (*Monell*-related claims) is also dismissed without leave to amend.  Plaintiff has had

19  multiple opportunities to identify an unconstitutional municipal policy or practice and it is

20  apparent further leave to amend would be futile.

21         If, in good faith and consistent with Rule 11, Plaintiff can amend her complaint to allege

22  facts resolving the deficiencies in Plaintiff's third cause of action against Defendant Baca and

23  sixth cause of action against Defendants Miller and Baca, and, in particular, plausibly allege facts

24  supporting an exception to their immunity from liability, then Plaintiff may file a third amended

25  complaint by July 12, 2024.  If Plaintiff chooses to file a third amended complaint, it shall omit the

26  dismissed causes of action and all allegations no longer pertinent to the remaining claims.  If she

27  chooses not to amend, the case will go forward on the third cause of action except as to Defendant

28  Baca.  A further case management conference will be held by Zoom video on October 3, 2024 [not

United States District Court
Northern District of California

18

1    September 12, as stated in Pretrial Order No. 1].  An updated joint case management conference

2    statement is due one week in advance.

3           This Order disposes of Docket No. 49.

4           **IT IS SO ORDERED.**

5    Dated: June 27, 2024

6

7

8                                                JACQUELINE SCOTT CORLEY
                                                United States District Judge
9

10